UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BANK OF NEW YORK MELLON AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-17, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-17 F/KA BANK OF NEW YORK,<br><br>Plaintiff,<br><br>v.<br><br>MARYLAND PEBBLE AT SILVERADO HOMEOWNERS ASSOCIATION; *et al.*,<br><br>Defendants. | Case No. 2:17-cv-00372-MMD-PAL<br><br>ORDER |
| AND ALL RELATED CASES | |

**I.    SUMMARY**

This case arises from the foreclosure sale of property to satisfy a homeowners' association lien. Before the Court is Plaintiff Bank Of New York Mellon as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-17, Mortgage Pass-Through Certificates, Series 2005-17, f/k/a Bank of New York's renewed motion for summary judgment (the "Motion") (ECF No. 63),[1] and Defendant Las Vegas Equity Group, LLC's ("LVEG") former attorney Aaron R. Dean's motion to adjudicate his attorney's lien ("Lien Motion") (ECF No. 57). Because the Court agrees with Plaintiff that it properly tendered the superpriority amount—and as explained below—the Court will grant

---

[1]LVEG filed a response (ECF No. 68), and Plaintiff filed a reply (ECF No. 69). Defendants Maryland Pebble at Silverado Homeowners Association (the "HOA"), ATC Assessment Collection Group, LLC f/k/a Angius & Terry Collections, LLC ("ATC"), and Kris Pacada did not file responses to Plaintiff's Motion.

Plaintiff's Motion. The Court also grants in part and denies in part Dean's Lien Motion because the fees he seeks are reasonable, and he has complied with the applicable Nevada statue, but his request for fees incurred in preparing the Lien Motion is unsupported.

## II.     RELEVANT BACKGROUND

The following facts are undisputed unless otherwise indicated.

In March 2005, Kris Pacada and Robin Pacada ("Borrowers") obtained a loan for $280,000 ("Loan") and executed a note secured by a deed of trust ("DOT") on the real property located at 8901 Living Rose Street, Las Vegas, Nevada 89123 ("the Property"). (ECF No. 63-1 at 2-4.) The DOT was assigned to Plaintiff in October 2011. (*Id.* at 25.)

Borrowers failed to pay HOA assessments, and the HOA recorded a notice of delinquent assessment lien in July 2011, identifying the amount due to the HOA to date as $973.31.[2] (*Id.* at 30.) The HOA recorded a notice of default and election to sell on September 2, 2011, identifying the amount due to the HOA to date as $1,803.54. (*Id.* at 32.) On August 6, 2013, the HOA recorded a notice of sale through ATC stating that $3,383.34 was owed to the HOA, including ATC's costs and fees. (*Id.* at 35-36.)

Counsel for the Loan's prior servicer, Bank of America, N.A., acting through its agent (the law firm "Miles Bauer"), requested from ATC a calculation of the superpriority portion of the HOA's lien and offered to pay that amount.[3] (*Id.* at 42-43.) ATC responded with a demand statement, which included a ledger showing all amounts allegedly due. (*Id.* at 45-48.) The ledger provided by ATC states that the periodic assessment due on the Property was $39.59. (*Id.* at 46.) Further, the ledger indicates Borrowers owed four of

---

[2] The notice was recorded by Defendant ATC, acting as agent for the HOA. (ECF No. 63-1 at 30.)

[3] Plaintiff offers the affidavit of Douglas E. Miles ("Miles Affidavit"), the managing partner of Miles Bauer, who authenticated Miles Bauer's business records and explained the information contained within Miles Bauer's records attached to his affidavit. (ECF No. 63-1 at 38-40.)

2

these, for a total of $158.36. (*Id.*) The ledger also indicates one $10 charge for "Clerical – bare spots on lawn;" one $10 charge for "Clerical – remove dead fronds on palm tree;" and one $10 charge for "Clerical – Trim Plants." (*Id.*)

Miles Bauer apparently calculated that nine months of assessments on the Property was $197.25[4] and tendered that amount ("the Check"), to ATC on December 28, 2011. (*Id.* at 50-53.) Miles Bauer's records show the Check was "rejected" by ATC. (*Id.* at 54.)

The HOA proceeded with the foreclosure sale on October 8, 2013 (the "HOA Sale"), and LVEG purchased the Property at the HOA Sale for $8,200. (*Id.* at 60-61.)

Plaintiff asserts claims for: (1) quiet title/declaratory judgment against all Defendants; (2) breach of NRS § 116.1113 against ATC and the HOA; (3) wrongful foreclosure against the HOA and ATC; (4) injunctive relief against LVEG; (5) deceptive trade practices against the HOA and ATC; and (6) judicial foreclosure against Borrowers. (ECF No. 1 at 7-16.) LVEG later filed a third-party complaint including claims for quiet title against Plaintiff and Borrowers, and unjust enrichment against Plaintiff. (ECF No. 19 at 20-24.)

### III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome

---

[4] As discussed *infra*, it is unclear to the Court how Miles Bauer calculated this amount, and Plaintiff has not clarified how Miles Bauer calculated this amount. (ECF No. 63 at 3, 69 at 2-4.)

3

of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

**IV. DISCUSSION**

The Court first addresses Plaintiff's Motion, and then Dean's Lien Motion.

### A. Plaintiff's Motion

Plaintiff argues it is entitled to summary judgment on its declaratory relief/quiet title claim because, in pertinent part, Plaintiff tendered the superpriority portion of the HOA's lien when Plaintiff's agent sent the Check to the HOA's agent. (ECF No. 63 at 12-13.) The

4

Court agrees that Plaintiff properly tendered more than the superpriority amount, and accordingly declines to address the parties' other arguments in Plaintiff's Motion and LVEG's response.

In several recent decisions, the Nevada Supreme Court effectively put to rest the issue of tender. For example, in *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113 (Nev.), *as amended on denial of reh'g* (Nov. 13, 2018), the Nevada Supreme Court held "[a] valid tender of payment operates to discharge a lien or cure a default." *Id.* at 117, 121. And it reaffirmed that "that the superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid assessments." *Id.* at 117. More recently, the Nevada Supreme Court held that an offer to pay the superpriority amount coupled with a rejection of that offer discharges the superpriority portion of the HOA's lien, even if no money changed hands. *See Bank of Am., N.A. v. Thomas Jessup, LLC Series VII*, Case No. 73785, --- P.3d ---, 2019 WL 1087513, at *1 (Mar. 7, 2019). Even more recently, the Ninth Circuit weighed in to confirm the Nevada Supreme Court had settled this issue—"the holder of the first deed of trust can establish the superiority of its interest by showing that its tender satisfied the superpriority portion of the HOA's lien," which "consists of nine months of unpaid HOA dues and any unpaid charges for maintenance and nuisance abatement." *Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, Case No. 17-15796, --- F.3d ---, 2019 WL 1461317, at *2 (9th Cir. Apr. 3, 2019).

Here, Plaintiff has presented undisputed evidence that it tendered more than the superpriority amount, so Plaintiff's tender discharged the HOA's superpriority lien, and the DOT continues to encumber the Property. Specifically, it is undisputed that Miles Bauer tendered the Check for $197.25 to ATC. (ECF No. 63-1 at 50-52.) While no party has explained how Miles Bauer arrived at that amount, it is a larger amount than the sum total of the assessments Borrowers owed (*id.* at 46 (stating they owed $158.36 in assessments)), and line item charges that could be construed as maintenance and

nuisance abatement charges (*id.* (indicating that 'Clerical' charges totaled $30)). Thus, Miles Bauer's tender of the Check discharged the HOA's superpriority lien. *See U.S. Bank Nat'l Ass'n v. Thunder Properties, Inc.*, Case No. 3:17-cv-00106-MMD-WGC, 2019 WL 469901, at *2 (D. Nev. Feb. 6, 2019) (finding that purchaser "failed to create a genuine issue of material fact as to whether BANA paid the assessments that made up the HOA lien" where it was undisputed that BANA paid an amount that equaled the maximum possible amount of the homeowners' association lien at issue in that case). The fact that ATC rejected the Check is immaterial. *See Thomas Jessup*, 2019 WL 1087513, at *3-*4.

The Court further rejects LVEG's argument (ECF No. 68 at 20) that the Miles Affidavit does not sufficiently authenticate the exhibits Plaintiff offered to support its tender argument, and LVEG's related argument that attacks the reliability of the computerized record Plaintiff offered to show that the HOA rejected Miles Bauer's tender. *See Nationstar Mortg. LLC v. Augusta Belford & Ellingwood Homeowners Ass'n*, Case No. 2:15-cv-01705-MMD-PAL, 2019 WL 1173341, at *4 (D. Nev. Mar. 12, 2019) (rejecting similar arguments regarding an affidavit from Doug Miles); *Bank of America, N.A., v. Boulder Creek Homeowners Association, et al.*, Case No. 2:16-cv-00572-GMN-PAL, 2019 WL 1441603, at *4-*5 (D. Nev. Mar. 30, 2019) (same).

The Court therefore finds that Plaintiff has demonstrated entitlement to summary judgment on its first claim for relief. In its Complaint, Plaintiff primarily requests a declaration that its DOT survived the HOA Sale. (ECF No. 1 at 16.) Given that Plaintiff has received the relief it requested, the Court dismisses Plaintiff's remaining claims as moot.

**B. Lien Motion**

In the Lien Motion, LVEG's former counsel Aaron Dean seeks to recover the fees he incurred litigating this case until he and LVEG parted ways. (ECF No. 57.) No party filed a response to the Lien Motion. Dean filed a motion to withdraw concurrently with the Lien Motion (ECF No. 58), which Magistrate Judge Peggy A. Leen granted (ECF No. 64).

LVEG is now represented by other counsel. (ECF No. 60.) Dean requested to withdraw from representing LVEG, and LVEG presumably hired other counsel, "due to irreconcilable differences, a breakdown of communication, and the failure and/or refusal of LVEG to pay its outstanding invoices and amounts owed" to Dean. (ECF No. 57 at 3.) Dean states that LVEG owed him $12,941.83 at the time he filed the Lien Motion. (*Id.*) He also seeks an additional $900 for the three hours it took him to prepare the Lien Motion. (*Id.* at 4.)

Dean's Lien Motion is based on a Nevada law that gives an attorney a lien on his or her client's money or property when the client does not pay the attorney. *See* NRS § 18.015. "Nevada recognizes two kinds of attorney's liens: (1) a 'charging lien' and (2) a 'retaining lien.'" *Nationstar Mortg., LLC v. Desert Shores Cmty. Ass'n*, Case No. 2:15-cv-01776-KJD-CWH, 2017 WL 1788682, at *1 (D. Nev. Jan. 13, 2017), *report and recommendation adopted sub nom. Nationstar Mortg., LLC v. RAM LLC*, Case No. 2:15-cv-01776-KJD-CWH, 2017 WL 1752931 (D. Nev. May 4, 2017) ("*Desert Shores*") (first citing NRS § 18.015, then citing *Argentena Consol. Min. Co. v. Jolley Urga Wirth Woodbury & Standish*, 216 P.3d 779, 782 (Nev. 2009)). Here, Dean appears to seek a retaining lien because LVEG has not yet recovered any money or property in this case (to which a 'charging lien' would attach), and Dean provided legal services to LVEG for which LVEG has not paid him. *See id.* at *1-*2. "[A] retaining lien attaches to the client's file or other property left in the attorney's possession until the court adjudicates the rights of the attorney, client, or other parties." *Id.* at *1 (citing NRS § 18.015(4)(b)).

Further, here, Dean has complied with the statutory requirement of giving notice of the lien (ECF No. 56), and the Court has waited more than the statutorily-required five days to adjudicate Dean's Lien Motion. *See* NRS § 18.015(6). Thus, the Court must address the related questions of whether the fees Dean seeks to recover from LVEG in the form of a lien on LVEG's file are reasonable, and whether his fee award may include

the costs associated with preparing the Lien Motion. *See Desert Shores*, 2017 WL 1788682, at *2.

### A. Reasonable Fees and Hours Worked

As noted, Dean seeks $12,941.83. (ECF No. 57 at 3.) In determining whether this amount is reasonable, the Court must consider: "(1) the qualities of the attorney; (2) the character of the work to be done; (3) the work the attorney actually performed; and (4) the result." *Desert Shores*, 2017 WL 1788682, at *2 (citing *Brunzell v. Golden Gate Nat. Bank*, 455 P.2d 31, 33 (Nev. 1969)). "An attorney's withdrawal from a case does not justify non-payment for reasonable hours actually worked on that case." *Id.* (citation omitted).

Here, as in *Desert Shores*, Dean's relationship with LVEG was governed by a contract. (ECF No. 57-2 (the "Contract").) In the Contract, LVEG agreed to pay Dean $300 an hour for his time spent on "Defense and/or prosecution of Quiet Title actions associated with Superpriority Liens under NRS 116.3116 et seq. for one or more of Client's properties," which logically includes this case. (*Id.* at 2, 3, 7.) Further, in the Contract, LVEG also agreed to give Dean a retaining lien on its file, which authorizes Dean to retain its file until LVEG pays in full for services previously rendered by Dean. (*Id.* at 4.) The Contract also provides, as applicable here, that this Court has jurisdiction to adjudicate the Lien Motion without Dean filing a separate action. (*Id.*) The Contract also gives Dean the right to withdraw—as he did here—for cause, such cause including non-payment of Dean's fees. (*Id.*; *see also id.* at 3.)

Considered together, the reasonableness factors weigh in favor of finding Dean's requested retaining lien of $12,941.83 is reasonable. The fourth factor, the result, does not weigh in Dean's favor because he withdrew from the case before reaching a favorable result for his client, and, as explained *supra*, the Court will grant Plaintiff summary judgment on its quiet title claim. Thus, Dean's former client is not on track to obtain a favorable result. But regarding the first two factors, Dean represents that his rate is reasonable and customary. (ECF No. 57 at 2.) Both the fact that LVEG signed the

Contract, and that LVEG did not oppose the Lien Motion, support Dean's representation and weigh in favor of the Court finding Dean's fees are reasonable. Thus, the first two factors weigh in Dean's favor. The third factor—the work actually preformed—also weighs in Dean's favor because he provided the Court with copies of invoices that show what Dean did in this case, and how long each task took him and his paralegal, with reasonable specificity—and the time billed does not appear excessive to the Court. (ECF No. 57-5.) In addition, the records Dean provided indeed include charges adding up to $12,941.83. (*Id.*) In sum, the Court finds that Dean has sufficiently shown he is entitled to a retaining lien on LVEG's file in the amount of $12,941.83.

### B. Costs of Preparing Lien Motion

As also noted above, Dean seeks $900 for his time spent preparing the Lien Motion. However, like in *Desert Shores*, neither caselaw nor the Contract support this request. *See Desert Shores*, 2017 WL 1788682, at *3. Dean cites no law in support of his request for his fees incurred in preparing the Lien Motion. (ECF No. 57 at 4.) Further, while the Contract specifically provides that Dean may recover his costs incurred in preparing a motion to withdraw as attorney as record, it is silent with respect to a motion to adjudicate an attorney's lien. The Contract's silence on this point therefore suggests the omission was deliberate, especially considering that Dean's potential attorney's lien is otherwise discussed in detail. (ECF No. 57-2 at 2, 4.) Thus, the Court finds Dean's request for $900 to prepare the Lien Motion is unfounded, and the Court will not award him a retaining lien reflecting this additional amount.

### V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

///

It is therefore ordered that Plaintiff's motion for summary judgment (ECF No. 63) is granted as to Plaintiff's first claim for relief. The Court declares that Plaintiff's DOT survived the HOA Sale and continues to encumber the Property. Plaintiff's remaining claims are dismissed as moot.

It is further ordered that Aaron Dean's Lien Motion (ECF No. 57) is granted in part, and denied in part. Dean's request for a retaining lien on his LVEG file of $12,941.83 for his services to LVEG, plus finance fees, is granted. Dean's request for additional fees for preparation of the Lien Motion is denied.

It is further ordered that the parties must file a joint status report with the Court regarding the impact of this order on LVEG's unjust enrichment counterclaim (ECF No. 19 at 23-25) within fourteen days.

The Clerk of Court is directed to enter judgment in Plaintiff's favor on its first claim for relief in accordance with this order.

DATED THIS 12th day of April 2019.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE